Lynda L. CHOATE, Plaintiff,

v.

CATERPILLAR TRACTOR CO., a Foreign Corporation (referred to in the complaint as Caterpillar Tractor Company), Defendant.

No. P–2894.

United States District Court
S. D. Illinois, N. D.

Nov. 1, 1967.

James L. Hafele, Peoria, Ill., for plaintiff.

Homer W. Keller, Miller, Westervelt & Johnson, Peoria, Ill., for defendant.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause is before the court upon defendant's motion to dismiss the complaint.

The complaint, based upon the equal employment opportunities provisions of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., alleges that plaintiff applied to defendant for employment as a factory worker on February 22, 1966, and that she was then told by an agent of defendant that she would not be employed for the reason that defendant would employ men to the exclusion of women as factory workers so long as male applicants for such work were available.[1]

that, about March 14, 1966, plaintiff filed "a written complaint with the Equal Employment Opportunity Commission"; that on or about October 5, 1966, plaintiff was advised by the Commission, by a writing, that the Commission "had determined that there was reasonable cause to believe" that the Act had been violated; that her complaint was filed in this court within thirty days thereafter; that the stated premises reveal that plaintiff was discriminated against on her application for employment because of her sex, and that defendant is intentionally engaging in an unlawful employment practice in violation of the Act.[2]

Defendant bases its motion upon its contention that the complaint fails in several particulars to allege that plaintiff has complied with procedural requirements of the Act. Though the complaint does sufficiently allege the substantive violation of the act of sexual discrimination in employment practices as applied to plaintiff,[3] the contention that she does not allege her compliance with the procedures required by the Act has a semantic basis which is apparent from the complaint. Whether those omissions require dismissal of the complaint depends upon whether allegations of plaintiff's strict compliance with the provisions of the Act are a substantive prerequisite to her statement of a cause of action.[4]

1. Though there is no clear allegation of the fact, it is assumed from the name "Lynda," the reference in the complaint to "the exclusion of women" and the feminine pronoun usage employed in the complaint, that plaintiff is a woman.

2. It is an unlawful employment practice for an employer "to fail or refuse to hire * * * any individual * * * because of such individual's * * * sex." U.S.C. § 2000e–2(a) (1).

3. Defendant's contention that the complaint fails to allege that employment was denied to plaintiff solely upon the basis of sexual discrimination is rejected. The allegation that an agent of defendant told plaintiff that her application for employment was denied because women would not be accepted for employment in the work classification sought as long as men were available is sufficient to

allege a violation of Section 703 of Title VII of the Act. 42 U.S.C. § 2000e–2(a) (1).

The court is also satisfied that defendant's alleged "intentional" engagement in discriminatory practices is sufficient to satisfy any such requirement imposed by Section 706 of Title VII of the Act. 42 U.S.C. § 2000e–5(g). Defendant's argument upon such basis is also rejected.

4. The complaint fails to allege where the alleged unlawful practice was committed. It is, therefore, wanting in any sufficient allegation as to venue.

The Act provides that all United States district courts have jurisdiction of suits arising under the Act, and that such suits "may" be filed in any district of the state in which the alleged unlawful employment practice was committed, in the district in which the employment records

The complaint alleges an act of discrimination on February 22, 1966, and that plaintiff filed "a written complaint" with the Commission on March 14, 1966. There can be no question that her initial contact with the Commission was timely if the complaint which she filed was adequate to invoke the administrative jurisdiction of the Commission.[5]

■ A critical question arises from the fact that the complaint does not allege that the written charge which plaintiff filed with the Commission was "under oath." Defendant contends that a complaint "under oath" is essential to initiate the administrative remedy for which the Act provides, and that allegations showing required pursuit of such administrative remedy is a jurisdictional prerequisite to the institution of a civil action.

In that regard, the statute provides that a person claiming to be aggrieved by an unlawful employment practice, as defined in the Act, may file a charge "in writing under oath" with the Commission; that the Commission shall then make an investigation, and, if there is reasonable cause to believe the charge is true, the Commission shall attempt, "by informal methods of conference, conciliation and persuasion," to obtain voluntary compliance with the Act; and that, if voluntary compliance cannot be obtained, the Commission shall so notify the person aggrieved who then may, within thirty days thereafter, file a civil suit against the alleged violator. 42 U.S. C. § 2000e–5(a) & (e).

No reported decision dealing with the precise question presented here has been found, but several courts have considered the related question whether exhaustion of the administrative remedy provided by the Act is a prerequisite to the institution of a civil action.

The issue involved in Dent v. St. Louis-San Francisco Ry. Co., N.D.Ala., 265 F. Supp. 56, was whether a civil action could be prosecuted before there had been any effort by the Commission to obtain voluntary compliance with the Act by conciliation. Following a lucid and extensive analysis of the legislative intent, as embodied in the legislative history of the Act, 265 F.Supp. at 58–60, the court held that compliance with the provisions of the Act requiring resort to conciliation is a jurisdictional prerequisite to the institution of a civil action. The court said that conciliation was intended by Congress as the basic means for enforcement of the Act's provisions, and that the alternative of coercion by civil process was permissible only after it had been determined that voluntary compliance could not be obtained.

Mickel v. South Carolina State Employment Service, 4 Cir., 377 F.2d 239, was an appeal from a judgment dismissing the plaintiff's complaint against Exide Battery Company. The plaintiff had filed a charge with the Commission against the State Employment Service. No charge had been filed against Exide.

In affirming the judgment, the court said that resort to the administrative remedy of conciliation is a prerequisite to "the extreme measure of bringing a civil action," and that a civil action would lie "only after conciliation efforts had failed, or, in any event, after opportunity had been afforded the Commission to make such efforts." 377 F.2d 241. The court held that the plaintiff had not availed herself of the administrative remedy of conciliation by filing a charge against

relevant to such alleged practice are kept, in the district in which the plaintiff would have been employed, except for such unlawful practice, or, in a proper case, in the district wherein the employer maintains his principal office. 42 U.S.C. § 2000e–5(f).

This complaint is defective in that particular and it might be dismissed on that basis. The objection, however, is one which could undoubtedly be cured by amendment. Justice to both parties dictates that decision should be based upon the substantive contentions against the complaint rather than on the question of venue.

5. "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred * * *." 42 U.S.C. § 2000e–5(d).

Exide, and that, therefore, she had not complied with the statutory requirements prerequisite to her right to prosecute a civil action against Exide. 377 F.2d at 242.

In Hall v. Werthan Bag Corp., M.D. Tenn., 251 F.Supp. 184, the court considered the question whether a class action would lie to enforce the provisions of the Act. The complaint was filed by Hall, a Negro employee of Werthan, on behalf of himself and all other Negro employees of the company who were similarly affected by alleged discriminatory practices. A motion by Tate, another Negro employee of the company, to intervene as a party plaintiff, gave rise to the court's opinion. Only Hall had invoked the administrative remedy provided by the Act by filing a charge with the Commission.

The court did hold that Tate could intervene in the suit and that the suit would lie as a class action. That decision was, however, expressly limited to the prayer of the complaint for prospective relief. The court reasoned that the Commission had employed the conciliation process in an effort to obtain voluntary compliance with the Act upon the charge filed by Hall. It held that the demands of the statute, that the conciliation process be first invoked, were satisfied insofar as the complaint sought to enjoin the continuation of racially discriminatory practices which were alleged to affect all Negro employees in the same way as a class. 251 F.Supp. at 187–188.

The court further held that retrospective relief, i. e., back pay or reinstatement, was available only to Hall in the proceeding, because the Commission had not had the opportunity to attempt "conciliation in regard to rectifying any alleged injuries which other Negro employees or would-be employees may claim to have suffered as a result of the defendant's alleged discrimination." 251 F.Supp. at 188.

■■ All of those decisions are considered as consistent in holding that resort to the remedy of conciliation is a jurisdictional prerequisite to the right to file a civil action. This court agrees with that construction of the Act. The plain language of the statute requires it, as does the established principle that statutes creative of remedies not known to the common law are to be strictly construed. Cf., e. g., Matheny v. Porter, 10 Cir., 158 F.2d 478, 479; Atlantic Coast Line R. Co. v. United States, M.D. Fla., 213 F.Supp. 199, 204, 205. Under such a statute, the right of action itself is conditioned upon strict compliance with all conditions imposed by the statute as a basis for assertion of a right of redress by resort to court processes.

Plaintiff's argument is rejected that Hall v. Werthan Bag Corp., M.D.Tenn., 251 F.Supp. 184, is authority tending to sustain her position that resort to the conciliation procedure is not a prerequisite to the right to file a civil suit. What the court did hold, as we have noted above in this opinion, is that where attempts at conciliation have failed to resolve a question which is common to a whole class of employees, it is not necessary, for the purpose of seeking prospective relief, that conciliation had been attempted on behalf of every member of the class. Clearly, the court would require each to invoke the conciliation machinery as a prerequisite to his seeking individual and retrospective relief. 251 F.Supp. at 188.

This court also rejects dictum in Ward v. Firestone Tire & Rubber Co., D.C., 260 F.Supp. 579, at 580, construing the Hall case as holding that a complaint before the Commission is not a jurisdictional prerequisite to a civil suit. Compare, Mickel v. South Carolina State Employment Service, 4 Cir., 377 F.2d 239, 242.

■ Does the provision requiring that the charge before the Commission be "under oath" partake of the same character as does the provision requiring resort to the conciliation procedure as a prerequisite to the institution of a civil action? In this court's opinion it does.

The legislative history of this Act unquestionably places the statutory em-

phasis upon conciliation and voluntary compliance as the principal and preferable method for its enforcement. The Act creates the Commission for the single, expressed purpose of enforcing the Act. 42 U.S.C. 2000e–4. It establishes an express course of procedure to be followed in the initiation and processing of charges filed with the Commission under the Act. 42 U.S.C. 2000e–5(a). The jurisdiction of the Commission is invoked only by the filing of a charge. Charges may be filed in two ways, namely, "a written charge" by any of the Commissioners who have reason to believe that a violation has occurred, or a charge "in writing under oath" by a person claiming to be aggrieved by a violation of the Act. 42 U.S.C. 2000e–5(a). When a charge has been properly initiated, the Commission is directed to give notice of the charge and to make an investigation thereof, and, if the Commission believes from its investigation that the charge is likely true, to seek to obtain voluntary compliance with the Act by "informal methods of conference, conciliation and persuasion." 42 U.S.C. 2000e–5(a). If that effort fails, a civil action may be filed within thirty days after the aggrieved person is notified that the Commission's efforts have proved to be fruitless. 42 U.S.C. 2000e–5(e) (1). The course of procedure is clearly delineated, with each step, in sequence, geared to the obtaining of compliance with the Act.

In addition to the mandate of avoiding discrimination in the specified particulars, the Act also requires an employer to keep and maintain records and to open them to the Commission in the course of any lawful investigation. The ultimate burden upon an employer which the Act envisions is a civil suit for injunction and other relief, including an award of attorneys' fees in a proper case. The statutory purpose of preventing discrimination in employment is tempered by an equally cogent need to protect employers and other persons subject to the Act's mandate from subjection to the burden of frivolous charges, claims and demands. The requirement that a person aggrieved invoke the statute's procedures by a sworn complaint effectually preserves the major purpose of this legislation and, at the same time, affords a measure of protection against harassment by frivolous and groundless claims to those upon whom the burden of the Act falls.

It seems obvious from the language of the Act that Congress attached significance to the requirement of an oath. There is no other explanation for the distinction made between charges made by a commissioner and charges made by a person who claims to be aggrieved. In the former case, a "written charge" suffices, while in the latter a charge "in writing under oath" is required. 42 U. S.C. 2000e–5(a). It seems to this court that the fact that Congress saw fit to make that distinction provides sufficient basis for holding that a sworn charge is a necessary requisite to the right to invoke the statutory remedy.

Plaintiff almost concedes the premise in her argument. She argues that a charge under oath is not necessary to the initiation of a civil suit, but that it is a prerequisite to setting the conciliation machinery of the Commission in motion. The analysis of previously decided cases hereinabove demonstrates the lack of merit of that contention. The right to file a civil suit presupposes, at the very least, that the conciliation processes of the Commission have been properly invoked. Effect must be given to the plain language of the statute.

Strict application of similar statutory provisions has been decreed in cases of other types. Atlantic Coast Line R. Co. v. United States, M.D.Fla., 213 F.Supp. 199, 205; Burrell v. LaFollette Coach Lines, E.D.Tenn., 97 F.Supp. 279, 282, 283. In the former, the filing of an unverified complaint before the Interstate Commerce Commission did not stop the running of a statute of limitations where the complainant had not complied with a rule of the Commission requiring that such complaints be verified. In the latter, an amendment to the Fair Labor Standards Act required that any suit for overtime

compensation be filed within 120 days after the effective date of the amendment and that a class suit could be instituted within such time by the filing of a complaint and, also, the written consent of each named plaintiff to become a party to the suit. It was held that a class suit was not commenced by the filing of a complaint only, not accompanied by the consents signed by each party plaintiff.

This court concludes that the filing of a verified charge with the Commission is necessary to invoke the statutory enforcement procedures. The complaint herein is fatally defective because it fails to allege that the complaint filed with the Commission was under oath.

No useful purpose appears for commenting upon other contentions made by the defendant against this complaint. For the reasons herein stated, judgment is entered for the defendant dismissing plaintiff's complaint.